UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GARY HANN,

      Plaintiff,

                              CASE NO. 05-CV-71347-PDB-PJK
                              JUDGE PAUL D. BORMAN
                              MAGISTRATE JUDGE PAUL J. KOMIVES

v.

STATE OF MICHIGAN, et al.,

      Defendants.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR ORDER REQUIRING DUE PROCESS PAROLE BOARD INTERVIEW AND FOR LEAVE TO AMEND FOR INCREASED DAMAGES (Doc. Ent. 9)**

**A.    Procedural History**

Plaintiff is currently in the custody of the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility in Muskegon, Michigan serving a sentence for a violation of Mich. Comp. Laws § 750.145c(2).[1] His earliest release date was November 9, 2004 and his maximum discharge date is November 9, 2022.[2]

---

[1] "A person who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material, or a person who arranges for, produces, makes, or finances, or a person who attempts or prepares or conspires to arrange for, produce, make, or finance any child sexually abusive activity or child sexually abusive material is guilty of a felony, punishable by imprisonment for not more than 20 years, or a fine of not more than $100,000.00, or both, if that person knows, has reason to know, or should reasonably be expected to know that the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child."

[2] *See* www.michigan.gov/corrections, "Offender Search".

Plaintiff filed his original complaint on April 7, 2005, naming several defendants. (Doc. Ent. 1 [Compl.]). On May 31, 2005, Judge Borman entered an order dismissing the following nine (9) defendants: Cheryl Farmer; David G. Gorcyca; Thomas M. Loeb; Michigan Department of Corrections; Michigan Parole Board; State of Michigan, John D. Roach, Jr.; George Basar and Kimberly Brown. The Michigan Parole Board was dismissed from the instant action, because "the Eleventh Amendment bars civil rights actions against a state and its departments unless the state has waived its immunity." (Doc. Ent. 5).

On June 14, 2005, plaintiff filed an amended complaint. (Doc. Ent. 6). Plaintiff's amended complaint seeks to change certain paragraphs, add certain paragraphs, and adjust the title of Count III.

**B.     Parole Board Interviews**

Plaintiff's eligibility for parole was assessed in 2004. On a May 24, 2004 MDOC Parole Guidelines Scoresheet, plaintiff received a preliminary parole guidelines score and a final parole guidelines score of 9 - calculating a "HIGH Probability of Parole." Compl. Ex. E. On June 9, 2004, plaintiff signed an MDOC Notice of Intent to Conduct a Parole Board Interview the week of July 12, 2004. Compl. Ex. D. Apparently, the interview took place on July 12, 2004. Compl. ¶ 52, Ex. B. Notes, apparently by James J. Quinlan[3] from plaintiff's 2004 interview, state that there is "no basis found for parole at this time." Doc. Ent. 9 ¶ 9, Ex. 3. In a July 26, 2004 MDOC Parole Board Notice of Decision, signed by Quinlan [7/22/2004] and Margie McNutt [7/26/2004], plaintiff was denied parole for 12 months and was assigned a reconsideration date

---

[3]James J. Quinlan is a member of the MDOC Parole Board. *See* www.michigan.gov/corrections, "New MDOC Parole Board Members Named", October 22, 2003

of November 9, 2005.  Compl. Ex. F.  On or about January 12, 2005, plaintiff compiled a "memorandum of true facts and law".  Doc. Ent. 9 Ex. 2.  These were "objections regarding numerous Due Process violations after the 2004 Interview."  Doc. Ent. 9 ¶ 6.

Plaintiff's eligibility for parole was also assessed in 2005, after the filing of his original complaint.  Allegedly, plaintiff scored a "+11" on his June 2005 MDOC Parole Guidelines Scoresheet.  Doc. Ent. 9 ¶ 7; Doc. Ent. 12-2 at 5 ¶ 475.  It appears that Quinlan interviewed plaintiff on June 27, 2005.  Doc. Ent. 9 Ex. 5 at 2.  In a June 30, 2005 MDOC Parole Board Notice of Decision, signed by Quinlan [6/27/2005] and Enid Livingston [6/30/2005], plaintiff was denied parole for 24 months and was assigned a reconsideration date of November 9, 2007.  Among the substantial and compelling reasons for a departure from the guideline is the notation that "P again this year blames underage children for entering adult chat rooms where they don't belong."  Among the reasons supporting the parole board action are "[h]istory of/or currently serving for CSC" - listed as an assaultive crime - and a criminal history of violent misdemeanors.  Doc. Ent. 9 ¶ 20, Ex. 5.  In an August 2005 affidavit, plaintiff discussed his June 27, 2005 parole board interview.  Doc. Ent. 9 Ex. 6.  On August 18, 2005, plaintiff wrote a letter to Governor Jennifer Granholm, the Michigan Parole Board (Attn: Chairman John Rubitschun) and the attorney general regarding his June 27, 2005 parole interview by Quinlan and requesting a recorded re-interview with a parole board panel or an unbiased board member.  Doc. Ent. 9 Ex. 1; Doc. Ent. 9 ¶ 5.  In a September 13, 2005 affidavit, plaintiff's brother (David F. Hann) discussed the June 27, 2005 parole board interview.  Doc Ent. 9 Ex. 7.

**C.      Plaintiff's September 19, 2005 Motion for Order Requiring Due Process Parole Board Interview and for Leave to Amend for Increased Damages is Denied.**

On September 19, 2005, plaintiff filed a motion for order requiring due process parole board interview and for leave to amend for increased damages.  (Doc. Ent. 9).  Plaintiff claims he "has been fully denied a Due Process 'administrative fair hearing' as mandated under [the Michigan Constitution]."  Doc. Ent. 9 ¶ 36.  He requests that this Court "order that the Michigan Parole Board interview Plaintiff on-the-record, with factual statements monitored by this Court, and that the Board make it's decision in an open meeting and vote pursuant to the Michigan Open Meetings Act."  Doc. Ent. 9 at 7-8.  Also, plaintiff seeks "to amend this action to add as defendant Enid Livingston, and to seek additional damages commensurate with this new denial of Legislatively mandated, liberty interest parole."  Doc. Ent. 9 at 8.

**1.      Plaintiff's request for a compliant parole board interview is denied.**

On January 18, 2006, Judge Borman referred this case to me for all pretrial proceedings. (Doc. Ent. 14).  Plaintiff claims that Quinlan conducted the June 27, 2005 interview "in a private room without any record being made, violative of Due Process, and without possibility of appeal."  Doc. Ent. 9 ¶ 1.  Relying upon Mich. Comp. Laws § 791.235(6), plaintiff claims that "[d]efendants continue to deny Plaintiff the due process of any legal counsel in interviewing with the Parole Board[.]" Doc. Ent. 9 ¶ 2.  According to plaintiff, the Parole Board "continues its secretive, completely non-transparent process, despite not being exempt from the Michigan Open Meetings Act[.]" Doc. Ent 9 ¶ 3.

**a.      Parole Board statutes and administrative rules**

Chapter 791 of the Michigan Compiled Laws governs the Department of Corrections. Statutes governing the "Bureau of Pardons and Parolees; Parole Board" can be found from Mich. Comp. Laws §§ 791.231-791.246.  With regard to granting parole the statute provides in part

that "[a] prisoner shall not be given liberty on parole until the board has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety." Mich. Comp. Laws § 791.233(1)(a).

As to parole guidelines, the statute provides:

(1) The department shall develop parole guidelines that are consistent with section 33(1)(a) and that shall govern the exercise of the parole board's discretion pursuant to sections 34 and 35 as to the release of prisoners on parole under this act. The purpose of the parole guidelines shall be to assist the parole board in making release decisions that enhance the public safety.

(2) In developing the parole guidelines, the department shall consider factors including, but not limited to, the following:
(a) The offense for which the prisoner is incarcerated at the time of parole consideration.
(b) The prisoner's institutional program performance.
(c) The prisoner's institutional conduct.
(d) The prisoner's prior criminal record. As used in this subdivision, "prior criminal record" means the recorded criminal history of a prisoner, including all misdemeanor and felony convictions, probation violations, juvenile adjudications for acts that would have been crimes if committed by an adult, parole failures, and delayed sentences.
(e) Other relevant factors as determined by the department, if not otherwise prohibited by law.

(3) In developing the parole guidelines, the department may consider both of the following factors:
(a) The prisoner's statistical risk screening.
(b) The prisoner's age.

(4) The department shall ensure that the parole guidelines do not create disparities in release decisions based on race, color, national origin, gender, religion, or disability.

(5) The department shall promulgate rules pursuant to the administrative procedures act of 1969, Act No. 306 of the Public Acts of 1969, being sections 24.201 to24.328 of the Michigan Compiled Laws, which shall prescribe the parole guidelines. The department shall submit the proposed rules to the joint committee on administrative rules not later than April 1, 1994. Until the rules take

> effect, the director shall require that the parole guidelines be considered by the parole board in making release decisions. After the rules take effect, the director shall require that the parole board follow the parole guidelines.
>
> (6) The parole board may depart from the parole guideline by denying parole to a prisoner who has a high probability of parole as determined under the parole guidelines or by granting parole to a prisoner who has a low probability of parole as determined under the parole guidelines. A departure under this subsection shall be for substantial and compelling reasons stated in writing. The parole board shall not use a prisoner's gender, race, ethnicity, alienage, national origin, or religion to depart from the recommended parole guidelines.
>
> (7) Not less than once every 2 years, the department shall review the correlation between the implementation of the parole guidelines and the recidivism rate of paroled prisoners, and shall submit to the joint committee on administrative rules any proposed revisions to the administrative rules that the department considers appropriate after conducting the review.

Mich. Comp. Laws § 791.233e. Citing Mich. Comp. Laws § 791.233e(6), plaintiff claims that Quinlan "is charged by the Legislature **only** with finding substantial and compelling reason(s) against parole, and **not** with seeking reason for parole; the parole is presumptive." Doc. Ent. 9 ¶ 10.

As to the release of a prisoner, the law provides that "[i]f an interview is to be conducted, the prisoner shall be sent a notice of intent to conduct an interview at least 1 month before the date of the interview. The notice shall state the specific issues and concerns that shall be discussed at the interview and that may be a basis for a denial of parole. A denial of parole shall not be based on reasons other than those stated in the notice of intent to conduct an interview except for good cause stated to the prisoner at or before the interview and in the written explanation required by subsection (12). This subsection does not apply until April 1, 1983." Mich. Comp. Laws § 791.235(4). The law further provides that "[a] prisoner may waive the right to an interview by 1 member of the parole board. The waiver of the right to be interviewed

shall be given not more than 30 days after the notice of intent to conduct an interview is issued and shall be made in writing. During the interview held pursuant to a notice of intent to conduct an interview, the prisoner may be represented by an individual of his or her choice. The representative shall not be another prisoner or an attorney. A prisoner is not entitled to appointed counsel at public expense. The prisoner or representative may present relevant evidence in support of release. This subsection does not apply until April 1, 1983." Mich. Comp. Laws § 791.235(6).

"Factors considered in granting or denying parole; psychological or psychiatric evaluations[,]" are set forth in Mich. Admin. Code R. 791.7715. Among other things, the Parole Board may consider "[t]he prisoner's physical and mental health, specifically any hospitalizations or treatment for mental illness and any irreversible physical or mental condition which would reduce the likelihood that he or she would be able to commit further criminal acts." Mich. Admin. Code R. 791.7715(2)(e).

Parole guidelines, factors, departure and appeal are governed by Michigan Administrative Code Rule 791.7716 which provides, in part: "Not less than once every 2 years, the department shall publish a numeric score for the factors set forth in subrule (3) of this rule and shall establish parole guideline score ranges which shall, to the extent possible based on current validity research, ensure that prisoners who score in the high probability of parole range do not exceed an assaultive felony recidivism rate of 5%." Mich. Admin. Code R. 791.7716(2). "A parole guideline score shall be based on a combination of the length of time the prisoner has been incarcerated for the offense for which parole is being considered and each of the following factors: . . . [t]he prisoner's mental health[.]" Mich. Admin. Code R. 791.7716(3)(g).

**b.     Michigan Open Meetings Act**

The Michigan Open Meetings Act is found at Mich. Comp. Laws §§ 15.261-15.275. In part, it provides that "[a]ll decisions of a public body shall be made at a meeting open to the public." Mich. Comp. Laws § 15.263(2).

**c.     Michigan Penal Code**

Chapter 750 of the Michigan Compiled Laws is the Michigan Penal Code. Plaintiff claims that defendant Quinlan exhibits a continuing bias by labeling plaintiff a "CSC", even though the legislature has declared only Mich. Comp. Laws § 750.520 (repealed), et seq. as "CSC" and the judiciary has held that Mich. Comp. Laws § 750.145c is not "CSC". Doc. Ent. 9 ¶ 11.[4] Furthermore, plaintiff claims, Mich. Comp. Laws § 750.145c is not classified as a sex offense by the executive branch. Doc. Ent. 9 ¶ 12. Plaintiff states that MDOC Operating Procedure 05.01.130 does not list Mich. Comp. Laws § 750.145c as a sex or assaultive offense. Doc. Ent. 9 ¶¶ 12, 19.[5] Plaintiff claims this is significant, in light of Rubitschun's admission in a June 9, 2005 Free Press article that the Parole Board "paroles 'sex offenders' at a 15% rate and all others at a 60-70% rate', and 'drug offenders' at 'about 80%'." Doc. Ent. 9 ¶ 13.

**d.     Analysis**

---

[4]"Child sexually abusive activity is part of the child protection laws and not one of the series of laws prohibiting criminal sexual conduct. Producing child sexually abusive material is a felony punishable by twenty years in prison. M.C.L. § 750.145c(2); M.S.A. § 28.342a(2). *People v. Ward*, 206 Mich.App. 38, 43 n.1, 520 N.W.2d 363, 365 (1994).

[5]Attached to plaintiff's motion is a copy of the December 15, 2003 attachment to Operating Procedure 05.01.130. Mich. Comp. Laws § 750.145c is not listed under "crimes of violence and assaultive offenses, their attempts, conspiracies and habitual offenders with an underlying offense listed below" or "sex offenses, their attempts, conspiracies and habitual offenders with an underlying offense listed below". Doc. Ent. 9 Ex. 4.

Plaintiff's motion is based upon eight (8) arguments.  First, plaintiff claims that the 2005 parole review was not conducted by a neutral and detached decision maker.  Doc. Ent. 9 ¶¶ 4-6.  He maintains that "[d]efendant Quinlan was in a clear conflict of interest as a pecuniary civil rights defendant in this lawsuit, and thus was not neutral or detached [during the 2005 review] as mandated [by] Due Process[.]"  Doc. Ent. 9 ¶ 4.

Second, plaintiff claims that his guidelines score indicated a high probability of parole.  Doc. Ent. 9 ¶ 7.  Third, citing Rule 791.7716, he claims that a high probability of parole is "presumptively under 5% recidivism".  Doc. Ent. 9 ¶ 8.

Fourth, plaintiff claims that there has been "overt, unlawful bias and misinformation".  Doc. Ent. 9 ¶¶ 9-19.  According to plaintiff, Quinlan's statement from the 2004 interview "flaunts the Legislature's directive to parole 'High Probability' inmates absent a 'substantial and compelling reason'."  Doc. Ent. 9 ¶ 9.  Plaintiff claims "[t]here is nothing in the Legislative directives permitting the Board to distinguish between type or class of crime regarding Plaintiff specifically in the 'High Probability' of parole category."  Doc. Ent. 9 ¶ 14.  He further claims that "[s]uch admitted bias violates Due Process and defies the Legislature which mandates parole for 'High Probability' inmates without distinction regarding type of crime."  Doc. Ent. 9 ¶ 15.  Plaintiff contends that "the Board fails to state why original sentences of 'sex offenders' are inadequate or disproportionate[,]" and alleges that "[o]thers charged with such crime receive substantially lesser terms of incarceration or bond, violative of Equal Protection."  Doc. Ent. 9 ¶¶ 16, 17.  Plaintiff disputes the 2005 decision's reference to "violent misdemeanors" and the characterization of a "victimless 'sting'" as "'assaultive'".  Doc. Ent. 9 ¶¶ 18, 19.

Fifth, plaintiff claims that the reason given was "conclusory, untruthful and implausible". Doc. Ent. 9 ¶¶ 20-22. Specifically, plaintiff notes that Quinlan used the same reason in 2005 for the two (2) year denial ("P again this year blames underage children for entering adult chat rooms where they don't belong."). Doc. Ent. 9 ¶ 20. Plaintiff contends this is untrue and unverifiable and argues it is implausible, questioning "why would [he] make such a statement when it had been used as a written 'reason' of denial the previous year by the same Defendant Quinlan?" Doc. Ent. 9 ¶ 21. Plaintiff and his brother deny that plaintiff made such a statement. Doc. Ent. 9 ¶ 22.[6]

Sixth, plaintiff claims that a designation of "high probability" is a protectable liberty interest. Doc. Ent. 9 ¶¶ 23-25. Citing Mich. Admin. Code R. 791.7765 ("Parole board panels."), plaintiff alleges that "the second member of the required 3-member panel, Mr. Livingston, did not seriously review or consider anything but Defendant Quinlan's wrongful opinion, thereby effectively denying Plaintiff Due Process regarding the legislatively mandated panel." Doc. Ent. 9 ¶ 25.

Seventh, plaintiff claims that "no lawful reason [was] given" for the denial of parole. Doc. Ent. 9 ¶¶ 26-33. Plaintiff contends that defendant Quinlan's reasons were not substantial, compelling, objective or verifiable. Doc. Ent. 9 ¶ 26. Plaintiff argues that Quinlan's conclusion that "[t]he Parole Board lacks reasonable assurance that the prisoner will not become a menace to society or to the public safety[,]" Doc. Ent. 9 Ex. 5, is inconsistent with "its own guideline

---

[6]"I **never** blamed anyone or anything for my situation, but only said truthfully that the encounter took place in an adult chat room, and that it was a one-time occurrence." Doc. Ent. 9 Ex. 6 ¶ 4 (Gary S. Hann Aug. 2, 2005 Affid.); "Gary **never** blamed anyone or anything for his situation[.]" Doc. Ent. 9 Ex. 7 ¶ 2 (David F. Hann Sept. 13, 2005 Affid.).

evaluation that Plaintiff has less than 5% chance of recidivism, and with the Board's own statistics which demonstrate that Michigan 'sex offenders' historically have less than a 2.65% rate of recidivism." Doc. Ent. 9 ¶ 27.  Plaintiff states that he has already been assessed as a "-5" for "Mental Health" under the Guidelines; the reason for the 2005 denial of parole is based upon psychological/mental health; and "the decision failed to state why the previous guideline scoring was inadequate or disproportionate." Doc. Ent. 9 ¶ 28.

Finally, plaintiff claims that "[a]fter giving an unlawful 1-year denial in 2004, Defendant Quinlan's 2005 2-year denial had no basis in the law or the facts and was vindictive and retaliatory." Doc. Ent. 9 ¶ 34.

Upon consideration of these arguments, plaintiff's motion is denied.  His attempt to insert a due process violation on the part of the Michigan Parole Board's 2005 review of his eligibility for parole is inappropriate because this is a claim challenging the fact or duration of his physical imprisonment and thus, plaintiff's sole federal remedy is to seek the writ of habeas corpus.  The Supreme Court has ruled that such claims must be filed independently, after exhaustion of all state remedies, and may not be asserted in a case brought under 42 U.S.C. § 1983.  *Preiser v. Rodriguez*, 411 U.S. 475 (1973).  In fact, on August 2, 2006, plaintiff filed a petition for writ of habeas corpus in which he challenges his September 20, 2002 judgment of conviction.  *Hann v. Harry*, Case No. 06-CV-13478-NGE-MKM.[7]

---

[7]In *Wilkinson v. Dotson*, 544 U.S. 74 (2005), "[t]wo state prisoners brought an action under 42 U.S.C. § 1983 claiming that Ohio's state parole procedures violate the Federal Constitution[]" in which they sought declaratory and injunctive relief. *Wilkinson*, 544 U.S. at 76.  The Court considered "whether they may bring such an action under Rev. Stat. § 1979, 42 U.S.C. § 1983, the Civil Rights Act of 1871, or whether they must instead seek relief exclusively under the federal habeas corpus statutes." *Id*.  The Court stated:

(continued...)

The Court has also ruled that, in general, there is no reasonable entitlement to due process that is created because a state provides for the mere possibility of parole. *Greenholtz v. Inmates of Nebraska Penal and Correctional Complex*, 442 U.S. 1 (1979). As the Sixth Circuit has more recently stated, "procedural statutes and regulations governing parole do not create federal procedural due process rights[.]" *Sweeton v. Brown*, 27 F.3d 1162, 1164 (6th Cir. 1994). "That Michigan parole authorities arbitrarily failed to follow their own state procedural standards could constitute a violation of state law but not federal law." *Sweeton*, 27 F.3d at 1166.

Furthermore, in *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 91 (1984), the Court considered "whether a federal court may award injunctive relief against state officials on the basis of state law." The Court stated: "A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Pennhurst*, 465 U.S. at 106.

---

[7](...continued)
 . . . a state prisoner's § 1983 action is barred (absent prior invalidation)–no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)–*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Id*. at 81-82 (emphasis in original). However, *Wilkinson*, wherein the plaintiffs sought "relief that [would] render invalid the state procedures used to deny parole eligibility . . . and parole suitability[,]" *Wilkinson*, 544 U.S. at 82, is distinguishable from the claim plaintiff seeks to insert here, whereby he seeks a compliant parole board interview.

**2.    Plaintiff's motion to amend to add defendant and to increase damages is denied as futile.**

Enid Livingston was appointed to the MDOC Parole Board effective January 30, 2005 through September 30, 2008.  *See* www.michigan.gov/corrections, "New Parole Board Members Named", December 22, 2004.  As previously noted, Livingston signed plaintiff's June 30, 2005 Notice of Parole Board Decision.  Plaintiff seeks to add Livingston as a defendant.  Doc. Ent. 9 at 8.

Fed. R. Civ. P. 15 governs "amended and supplemental pleadings".  As to amendments, it provides:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

Fed. R. Civ. P. 15(a).  With regard to "relation back of amendments", the rule provides:

> An amendment of a pleading relates back to the date of the original pleading when
>
> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits,

>and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.
>
>The delivery or mailing of process to the United States Attorney, or United States Attorney's designee, or the Attorney General of the United States, or an agency or officer who would have been a proper defendant if named, satisfies the requirement of subparagraphs (A) and (B) of this paragraph (3) with respect to the United States or any agency or officer thereof to be brought into the action as a defendant.

Fed. R. Civ. P. 15(c).

While "...the allegations of [a] pro se complaint [are held] to less stringent standards than formal pleadings drafted by lawyers..." *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "[leave to amend] is by no means automatic.'" *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993), quoting *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 666 (5th Cir. 1981). "Undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment are all factors which may affect the decision." *Hageman v. Signal L. P. Gas, Inc.*, 486 F.2d 479, 484 (6th Cir.1973), citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); accord *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993).

As previously noted, plaintiff alleges that "the second member of the required 3-member panel, Mr. Livingston, did not seriously review or consider anything but Defendant Quinlan's wrongful opinion, thereby effectively denying Plaintiff Due Process regarding the legislatively mandated panel." Doc. Ent. 9 ¶ 25. However, as previously stated, plaintiff's request for a

compliant parole board interview is denied. Therefore, plaintiff's motion to amend to add defendant Livingston and to increase damages is denied as futile.[8]

**D.     Order**

Consistent with the foregoing, plaintiff's motion for order requiring due process parole board interview and for leave to amend for increased damages (Doc. Ent. 9) is DENIED. Plaintiff's request for leave to amend for increased damages is DENIED WITHOUT PREJUDICE to renewal if this case proceeds to trial.

IT IS SO ORDERED.

The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of ten days from service of a copy of this Order within which to serve and file any objections for consideration by the District Judge as may be permissible under 28 U.S.C. 636(b)(1).

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 8/30/06

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on August 30, 2006.
>
> s/Eddrey Butts
> Case Manager

---

[8]The instant motion makes mention of defendant Quinlan several times. Doc. Ent. 9 ¶¶ 1, 4, 9, 10, 11, 19, 20, 21, 25, 26, 27 and 34. The reasoning in support of my conclusion that amendment to add Livingston as a defendant would be futile would also apply to an effort to amend the complaint to increase damages based upon allegations against defendant Quinlan.